UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES E. LORENTZ, | ) |
| | ) No. CV-09-0171-CI |
| Plaintiff, | ) |
| | ) ORDER DENYING PLAINTIFF'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) AND GRANTING DEFENDANT'S |
| MICHAEL J. ASTRUE, | ) MOTION FOR SUMMARY JUDGMENT |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 16.) Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Richard A. Morris represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for the Defendant.

Plaintiff applied for disability insurance benefits (DIB) and Supplemental Security Income (SSI) in May 2007. (Tr. 110-19.) He alleged disability due to "pain, mental, disc, neuropathy, and chronic depression," with an onset date of April 1, 2004. (Tr. 16, 152.) Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge (ALJ) R.S. Chester on March 10, 2009. (Tr. 33-62.) Plaintiff, who was represented by counsel, and vocational expert Dan McKinney

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

testified. On March 25, 2009, ALJ Chester denied benefits; the Appeals Council denied review, and this appeal followed. (Tr. 16-32, 1-4.) Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Commissioner's findings are upheld if supported by inferences reasonably drawn from the evidence. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. Plaintiff was 53 years old at the time of the hearing. (Tr. 37.) He had a high school education and less than a year of college. (Tr. 38, 158.) He has past work experience as a cook, a delivery driver, and a musician (organ keyboardist). (Tr. 38.) At the time of the hearing, Plaintiff was single with one adult son. He lived in a basement room rented from friends. (Tr. 48.) He reported he did little cooking or cleaning, and his friends and landlord helped him with transportation, grocery shopping, and chores. (Tr. 49-50, 248.) He testified at the hearing that he had trouble manipulating with his fingers, he could climb stairs, walk two or three blocks, sit for 15 to 20 minutes before he had to move around, and lift ten pounds. (Tr. 46-49.) He also stated he experienced neck pain and dizziness. He stated he had to quit his job as a delivery driver because he could not keep up with the pace and he had back problems and hand numbness that caused him to drop things. (Tr. 39, 41, 46-47.)

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff was insured for DIB through September 30, 2006. (Tr. 18.) At step one, he found Plaintiff had not engaged in substantial gainful activity since April 1, 2004, the alleged onset date. (*Id*.) At step two, he found Plaintiff had the

severe impairments of "carpal tunnel syndrome status post release X2, ulnar nerve impairment of status post surgery, degenerative disk disease in the lumbar and cervical spine, peripheral neuropathy, cannabis abuse, depression, personality disorder, and pain disorder." (*Id*.) He found Plaintiff's reported knee pain and asthma were non-severe impairments. (Tr. 19.)

The ALJ then found Plaintiff's impairments, alone or in combination, did not equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (Tr. 19.) After a discussion of the medical evidence, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work, *i.e.*, he could lift or carry 20 pounds occasionally, lift or carry 10 pounds frequently, and sit, stand and/or walk for six hours in an eight-hour workday. (Tr. 21.) In addition, the ALJ found Plaintiff could "frequently finger and feel [and] . . . have superficial contact with the public and limited collaboration with coworkers." (*Id*.) The ALJ found Plaintiff's subjective statements regarding the intensity and limiting effects of his impairments were not credible to the extent they were inconsistent with the RFC findings. (Tr. 21-22.) After a thorough discussion of the medical evidence and consideration of vocational expert testimony, the ALJ found Plaintiff could still perform past relevant work as an outside deliverer as typically performed and as a short order cook as typically performed.[1] (Tr. 31.) ALJ Chester concluded Plaintiff had not been under a "disability" as defined by the Social Security

---

[1] The VE testified both jobs are classified as light work by the DICTIONARY OF OCCUPATIONAL TITLES. (Tr. 57-58.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Act from April 1, 2004, through the date of his decision.  (Tr. 31.)

**ISSUES**

The question presented is whether there is substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred when he improperly rejected limitations assessed by his treating physician and an examining psychologist. He contends the improperly rejected limitations assessed should be credited, which would result in a finding of "disabled."  (Ct. Rec. 14.)

**DISCUSSION**

The RFC determination represents the most a claimant can still do despite his physical and mental limitations.  20 C.F.R. §§ 404.1545, 416.945.  The RFC assessment is not a "medical issue" under the Regulations; it is based on all relevant evidence in the record, not just medical evidence.  *Id.*  The final RFC determination represents dispositive administrative findings regarding a claimant's ability to perform basic work and may direct the determination of disability.  20 C.F.R. §§ 404.1546, 416.946; *SSR 96-5p*.  Because the RFC assessment is part of the sequential evaluation, and critical to a finding of disability and eligibility for benefits, the final responsibility for determining a claimant's RFC rests with the Commissioner after consideration of the record in its entirety.  *Id*.  When RFC findings and final determination reflect a rational interpretation of the evidence, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097.

In assessing the RFC, an adjudicator must consider all medical evidence provided. No special significance is given to a medical source opinion on the issues of RFC and disability as these are issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); *SSR* 96-5p; *SSR* 96-2p. While a treating source opinion is never entitled to controlling weight, these opinions may never be ignored.

Generally, medical source opinions of treating or examining physicians are given more weight than those of non-examining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If a treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion with specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). The ALJ must explain the consideration given to medical source opinions, and if supported by substantial evidence, the physician's findings in medical source statement may be adopted in the Commissioner's RFC assessment. However, the ALJ need only explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding

the treating physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir 1989).  The ALJ need not accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (*citing Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).  Where an ALJ determines a treating or examining physician's stated opinion is materially inconsistent with the physician's own treatment notes, legitimate grounds exist for considering the purpose for which the doctor's report was obtained and for rejecting the inconsistent, unsupported opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996.)  Rejection of an examining medical source opinion is legitimate where the medical source's opinion is not supported by his or her own medical records and/or objective data. *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008).  As the Ninth Circuit has emphasized, an ALJ is not required to recite specific words in rejecting medical opinions. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989.)  On review, the court can read the adjudicator's summary of the evidence and findings and draw legitimate inferences relevant to the medical source's opinion. *Id*.

**A.   Kendra Long, M.D., Native Health of Spokane**

Plaintiff asserts Dr. Long is a treating physician whose opinions were improperly rejected and should be credited. (Ct Rec. 14 at 14.)  Defendant states the ALJ properly considered Dr. Long an examining physician.  (Ct. Rec. 17 at 11.)  A treating physician opinion is given more weight because she can provide "a detailed, longitudinal picture of a claimant's impairments." 20 C.F.R. §§

404.1527(d), 416.927(d). Only if the treating source has seen a claimant a number of times and "long enough to have obtained a longitudinal picture of [the claimant's] impairment" is the treating source opinion given more weight than that of an examining medical source. *Id.* A treating source opinion regarding a claimant's ability to perform work activities is not controlling if it is inconsistent with other evidence in the medical record. *SSR* 96-2p. The record in its entirety must be considered before the final RFC and disability determination is made.

The record indicates Plaintiff first saw Dr. Long in July 2006 for a GAU evaluation. He brought his records from previous providers and indicated he was in the process of changing primary care providers. (Tr. 322, 325.) He returned to Native Health later in July 2006 for a brief follow-up to lab work and a specialist referral. (Tr. 313.) He returned in January 2007 for a GAU review. (Tr. 299.) Dr. Long indicated on the January 2007 evaluation form that she was not a treating physician, and she did not know if she was going to provide ongoing care. (Tr. 304.) Plaintiff did not return to see Dr. Long until February 2008, at which time she noted she had not seen him since January 2007. (Tr. 416.) As with prior visits, Plaintiff was there for a GAU review. (*Id.*)

The nature and extent of Dr. Long's relationship with Plaintiff is not that of a treating source warranting controlling weight, or more weight than that of an examining physician who has seen a claimant for evaluation. Nonetheless, the ALJ is obliged to provide specific and legitimate reasons for giving little weight to her contradicted opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

Cir. 2005).

Medical records indicate in July 2006, January 2007, and February 2008, Dr. Long completed physical evaluation forms opining Plaintiff was limited to sedentary work as defined by the agency evaluation form.  (Tr. 304, 319, 416.)  The evaluations are accompanied by Dr. Long's clinic notes.  (Tr. 298-305, 416-21, 436-49.)  In a clinic note dated January 26, 2007, Dr. Long comments on Plaintiff's statement that he could not work because of his ailments, and noted she had no reason to doubt him because she knew the condition could be painful.  (Tr. 299.)  However, this statement appears to be a subjective reaction to Plaintiff's distress, and contradicts her professional opinions in July 2006 and January 2007 that he could work at sedentary level. (Tr. 303, 319.)  As discussed below, the ALJ properly found this comment should be given little weight.  (Tr. 28.)

In February 2008, Plaintiff returned to Dr. Long for a GAU review.  He complained of ongoing peripheral neuropathy symptoms, neck and knee pain, as well as asthma symptoms.  (Tr. 416.)  Dr. Long examined Plaintiff, ordered MRI imaging for the knee, and referred Plaintiff to a specialist for further evaluation of neuropathy.  (*Id*.)  In her progress note, she discussed Plaintiff's subjective complaints, tobacco and marijuana use and noted her recommendation that Plaintiff quit smoking.  (*Id*.)  In the evaluation form completed that day, Dr. Long also opined Plaintiff's work level was "sedentary."  (Tr. 419.)

After a thorough and detailed summary of the medical evidence, the ALJ specifically rejected Dr. Long's opinion that Plaintiff was

restricted to sedentary work by his impairments. (Tr. 21-27, 28.) The ALJ gave the following reasons: Dr. Long observed that Plaintiff's subjective complaints were not supported by objective medical evidence, including negative lab reports and imaging (Tr. 28, 299, 324); she opined Plaintiff's impairment was mild to moderate in January 2007 (Tr. 28, 303); there was no objective evidence of significant decreased sensitivity or other signs of peripheral neuropathy referenced in her notes in support of her opinions. (Tr. 28, 299, 324, 416.)

The record and the ALJ's summary of the evidence support these specific and legitimate reasons. For example, the evidence shows inconsistencies between Dr. Long's observations in clinic notes and her assessment of significant limitations. The records indicate Dr. Long noted Plaintiff was vague about his symptoms and complaints (which she said did not include a lot of pain complaints); on exam, he demonstrated a 5/5 grip, excellent strength, normal gait, and was sensitive to pin pricks (contrary to complaints of numbness). Also, in her narrative, she observed on examination that Plaintiff did not exhibit a lack of sensation and as a result, she was uncertain as to where his alleged neuropathy was located. She also expressed concern regarding his non-compliance with requests for drug testing and recommendations to quit smoking tobacco and marijuana. (Tr. 299, 323, 416.)[2]

---

[2] After summarizing Plaintiff's testimony and referencing evidence that conflicted with Plaintiff's allegations and impugned his credibility, the ALJ discounted Plaintiff's symptom complaints.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

Other medical evidence supports the ALJ's rejection of Dr. Long's opinion. Although Plaintiff's treating physician Philip Monroe, M.D., opined Plaintiff was limited to sedentary work in August 2005, that limitation lasted less than 6 months. (Tr. 269-72.) As found by the ALJ, Dr. Monroe opined in January 2006 that Plaintiff was capable of light work with mild limitations in lifting and handling, based on objective test results and examination. (Tr. 28, 265-67.) The ALJ found Dr. Monroe's opinion was consistent with the medical records and properly gave it significant weight. *Benecke*, 379 F.3d at 592.

The ALJ's explanation of the weight given to Dr. Long's medical opinion is a rational interpretation of the evidence and consistent with the record in its entirety. Further the reasons for discounting her opinion are specific, legitimate and supported by substantial evidence. The ALJ did not err in his rejection of Dr. Long's opinion that Plaintiff is limited to sedentary work.

**B.   W. Scott Mabee, Ph.D., Northwest Behavioral Health Clinic**

Plaintiff contends the ALJ also improperly rejected Dr. Mabee's opinion that he would not be able to function in a normal work environment due to psychological factors. He argues the ALJ did not

---

(Tr. 21-22.) In assessing the entire record as required by the Regulations, the ALJ properly considered Plaintiff's credibility and gave clear and convincing reasons for finding the claimed severity of his limitations not credible. (Tr. 26-27.) This finding is not challenged and is supported by substantial evidence. *Thomas*, 278 F.3d at 958.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

specifically reject "marked" limitations in each of Dr. Mabee's reports. (Ct. Rec. 14 at 16.) However, a review of the record and the ALJ's findings confirms the ALJ properly relied on the narrative portions of the Dr. Mabee's psychological evaluations and specifically rejected the moderate to marked limitations in social functioning assessed in 2007, 2008, and 2009. (Tr. 30-31.)

The court has consistently ruled a medical opinion is properly rejected if not supported by the physician's own notes and/or narrative assessment as well as other evidence in the record. *Tonapetyan*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Thomas*, 278 F.3d at 957; *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996.) In addition, inconsistencies between an opinion and the rest of the record is a specific and legitimate reason to reject an examining psychologist's opinion. *See Bayliss*, 427 F.3d at 1216.

The record shows that in 2007, Dr. Mabee, in association with Amy Robinson, M.S., diagnosed pain disorder, dysthymic disorder, personality disorder and peripheral neuropathy. (Tr. 223.) In his narrative report, Dr. Mabee opined Plaintiff was able to understand simple and complex instructions, had average pace and persistence, and was able to use reasoning and judgment with some distraction caused by physical complaints. (Tr. 224.) He also found Plaintiff tended to isolate and lacked an ability to interact appropriately with others. (*Id*.) In 2008, in association with mental health professional Abigail Osborne-Elmer, M.S., Dr. Mabee opined Plaintiff's physical problems would interfere with his ability to tolerate the work environment, but he could still follow simple and complex instructions and had average judgment, pace, and

persistence. (Tr. 409.) In 2009, in association with supported by Victoria Carroll, M.S., Dr. Mabee opined Plaintiff had no significant social anxiety, but because of his physical problems would have difficulty tolerating a normal work environment. (Tr. 425.) In all three evaluation forms completed by the mental health examiners, several moderate and marked limitations were assessed in social functioning. (Tr. 372, 414, 434.)

The ALJ specifically gave little weight to "moderate to marked limitations in social functioning" found in Dr. Mabee and associates' evaluation forms. He gave the following reasons for the weight give to the evaluations as they related to social functioning: (1) they were inconsistent with evidence that Plaintiff was able to maintain friendships and have roommates; (2) Plaintiff gave no statements to the evaluators about his social functioning upon which to base such limitations; and (3) there were no observations by examiners to support a conclusion that Plaintiff was delusional or eccentric. (Tr. 30.) These are specific and legitimate reasons supported by Plaintiff's hearing testimony and other evidence in the record. (*See, e.g.,* Tr. 48, 50, 407.)

Referencing findings in the 2008 and 2009 reports, the ALJ further explained why little weight was given the social functioning limitations, noting that "aside from some irritability, again the evidence in the respective reports shows the claimant's depression and anxiety levels are only moderate to mild." (Tr. 30-31.) The ALJ also found the social functioning limitations were not consistent with (1) evidence of mild to moderate depression and anxiety in the evaluators' objective testing; (2) the evaluator's

recorded observation of no significant social anxiety; and (3) the absence of any reports by Plaintiff of social anxiety or marked problems in social functioning. (*Id.*) ALJ Chester's reasoning is supported by the narrative reports and by Plaintiff's self-report of sharing a household tasks with his house mates, and of social interaction with friends, his landlady and house mates. (Tr. 49-50, 133-34, 164-65, 248.) The ALJ's reasoning is also supported by other medical evidence.

    As discussed by the ALJ, other examining mental health professionals found Plaintiff isolated and had problems with groups of people, but not to the degree opined in Dr. Mabee's evaluations. (Tr. 29.) The ALJ specifically referenced other medical opinions that Plaintiff was not significantly impaired by psychological conditions, based on objective tests and personal examination. (Tr. 29.) He gave significant weight to the opinions of psychiatrist Paul Michels, M.D., who conducted a psychiatric examination in July 2005. (Tr. 244-49.) Dr. Michels stated Plaintiff reported independent personal care and the following daily activities: he prepared meals alone or with his roommates; occasionally helped with household chores; did his own laundry; and relied on others for transportation because of "poor reaction time." (Tr. 248.) Plaintiff also reported he had a few friends "with whom he keeps in close contact"; he gets out of the house daily for a walk or to go to a coffee shop; he takes care of his dog; and he visits friends. (*Id.*) He also reported marijuana use on a weekly basis. (*Id.*) Regarding a 2005 self-reported suicide attempt by overdose of a muscle relaxant, Methocarbamol, Plaintiff stated he had stopped

taking his anti-depressants at the time of the incident. No psychiatric hospitalization was required, and mental health treatment was not recommended. (Tr. 246.) Plaintiff reported he now was taking anti-depressants and denied current suicide ideation to Dr. Michels and other examining psychologists of records. (Tr. 245, 246; *see also* Tr. 213, 262, 407, 423.) Based on the interview and objective testing, Dr. Michels opined Plaintiff had a long history of satisfying "psycho-social activity"; normal concentration; fair pace and persistence; depressive symptoms which appeared to be triggered by his distress with his physical condition; and moderate problems with social interaction, mainly resulting in irritability. (Tr. 249.)

In March 2006, examining psychologist Kayleen Islam-Zwart, Ph.D., stated unequivocally that Plaintiff had no psychological disorder that would prevent him from working. (Tr. 217.) As noted by Dr. Islam-Zwart in her narrative report, Plaintiff's presenting problems were physical complaints with concurrent depression. (Tr. 213.) He self-reported social isolation, having trust issues, and problems getting along with others because they were threatened by his intelligence. Dr. Islam-Zwart stated Plaintiff was anxious at the beginning of his appointment but "appeared to establish rapport as the interview progressed." (Tr. 214.) She indicated he had a normal mental status exam, reported no problems in his activities of daily living, indicated he rented a room in a friend's house, used marijuana up to twice a week, and considered his physical condition as his biggest barrier to employment. (Tr. 213, 217.) Dr. Islam-Zwart observed no delusional, bizarre or atypical preoccupations in

his speech or any indications of a formal though disorder. (Tr. 214.) She recommended up to six months abstinence from marijuana use to determine accurately the source of his depression. (Tr. 217.) Consistent with the ALJ's RFC assessment, limited contact with peers and supervisors in the work environment was recommended. (Tr. 21, 30, 217.)

In 2007, examining psychologist John McRae, Ph.D., noted Plaintiff reported mild physical limitations in his activities of daily limitations, a moderate level of depression and mild anxiety. Plaintiff reported marijuana use two to three times a week, most recent use three days before the interview. (Tr. 261-62.) Plaintiff stated his medication was somewhat helpful for his depression and anxiety. (Tr. 261.) Dr. McRae noted that in his mental status examination, Plaintiff denied "any psychotic symptoms like hallucinations or delusions," but reported a number symptoms of depression. (Tr. 262.) However, clinical testing showed a marked to severe range of anxiety, and mild to moderate range of depression. (Tr. 262.) Dr. McRae assessed no cognitive problems from clinical test results, and some social limitations. He also noted Plaintiff's isolating behavior and social limitations could offend co-workers. (Tr. 263.)

Where, as here, there are internal conflicts in the medical evidence or conflicts with other accepted medical source opinions, it is solely the ALJ's responsibility to resolve the conflicts. *Saelee*, 94 F.3d at 522; *Allen*, 749 F.2d at 580 n.1; *Magallanes*, 881 F.2d at 750. As evidenced by his detailed summary of the evidence, the ALJ considered reports from all of the mental health

professionals that Plaintiff had social functioning limitations in that he was isolating and had problems getting along with people. The ALJ's RFC finding that Plaintiff would be limited to superficial contact and limited interaction with co-workers is reasonable in light of the evidence in its entirety and the ALJ's credibility findings.  The ALJ's final RFC determination is a reasonable resolution of conflicting evidence in the record regarding Plaintiff's social functioning.  Because the ALJ's interpretation of all relevant evidence presented in the entire record is rational and supported by substantial evidence in the record, the Commissioner's decision cannot be disturbed.  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

2.   Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 16)** is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  The file shall be **CLOSED** and judgment entered for **Defendant.**

DATED July 12, 2010.


                         S/ CYNTHIA IMBROGNO
                      UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18